IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PARADISE MEDIA VENTURES,
LLC doing business as
Interactive Media Ventures
also known as Social Media Marketing
University,

    Plaintiff,

    v.

ERIC MILLS,

    Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-1003-TWT

OPINION AND ORDER

This is a trademark infringement action concerning the mark "Certified Social Media Strategist." It is before the Court on the Defendant Eric Mills' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative to Transfer to the United States District Court for the District of Minnesota [Doc. 6]. For the reasons set forth below, the Motion to Dismiss [Doc. 6] is GRANTED.

I. Background

This case is about a service mark used to identify the Plaintiff Paradise Media Ventures, LLC's online social media training course. The Plaintiff is in the business

of training individuals to better utilize social media outlets for marketing. (Am. Compl. ¶ 18.) Since 2009, it has conferred the title "Certified Social Media Strategist" upon those that have successfully completed its course. (Am. Compl. ¶¶ 20-21.) The "Certified Social Media Strategist" mark has not been registered. (Am. Compl. ¶ 23.)

The Defendant Eric Mills, a Minnesota resident, operates the National Institute for Social Media ("NISM"), a Minnesota company. (Am. Compl. ¶ 28.) The NISM provides its own social media training course. (Am. Compl. ¶ 28.) Initially, the course awarded successful students with the title "Certified Master of Social Media." (Am. Compl. ¶ 30, Ex. A.) Eventually, the Defendant modified this title to "Certified Social Media Strategist." (Am. Compl. ¶ 32.) Unlike the Plaintiff's course, which costs around $4,000, the Defendant's course is offered for as low as $295. (Am. Compl. ¶¶ 24, 33.) The Defendant's course has also been offered through academic institutions, including Atlanta Technical College and Columbus State University. (Am. Compl. ¶ 34, Exs. B, C.) However, neither the Defendant nor the NISM has any employees in Georgia. (Mills Decl. ¶¶ 3, 5.) The NISM does not physically offer any classes in Georgia, and there is no indication that anyone in Georgia has signed up for the Defendant's class through the NISM. (Mills Decl. ¶ 5.) The Plaintiff brought claims under the Lanham Act and the Georgia Uniform Deceptive Trade Practices Act. The Defendant now moves to dismiss for lack of personal jurisdiction, or in the alternative

to have the case transferred to the United States District Court for the District of Minnesota.

II. Legal Standard

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). The plaintiff establishes a prima facie case by presenting "enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted. Foxworthy v. Custom Tees, Inc., 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995). If, however, the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir. 2010); Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). If the

plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Madara, 916 F.2d at 1514.

## III. Discussion

Two requirements must be met for the Court to have personal jurisdiction over the Defendant. First, there must be jurisdiction under Georgia's long-arm statute. See Madara, 916 F.2d at 1514 ("First, we consider the jurisdictional question under the state long-arm statute."). Second, the exercise of jurisdiction must be consistent with the Due Process Clause of the Fourteenth Amendment. See id. ("[W]e next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'").

Here, the Court's analysis begins--and ends--with the first requirement: the Court does not have personal jurisdiction over the Defendant under Georgia's long-arm statute.[1] This statute reads, in relevant part:

---

[1] The Georgia long-arm statute does not confer personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. See Diamond Crystal Brands, 593 F.3d at 1259 ("[T]he Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process. . . .[i]t imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process.").

> A court . . . may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state . . .; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9-10-91. The Plaintiff contends that jurisdiction may be found under all three subsections. Each will be discussed.

First, subsection 1 is read literally, circumscribed only by the Due Process Clause. See Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames, 279 Ga. 672, 675 (2005). "[U]nless and until the Georgia courts provide further authoritative guidance, courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business within this state' requirement of O.C.G.A. § 9-10-91(1) according to the facts of each case." Diamond Crystal Brands, 593 F.3d at 1263. The Court must "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." Id. at 1264. Subsection 1 applies to business transactions "conducted through . . . Internet contacts." ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc., 298 Ga. App. 528, 534 (2009); see also Innovative Clinical, 279 Ga. at 675 ("[N]othing in subsection (1) requires the

physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State.”). The defendant must have "purposefully done some act or consummated some transaction in this state."[2] Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 517 (2006).

Here, the Defendant never transacted business with anyone in Georgia. The Defendant testified that nobody in Georgia took the class he offered through NISM. (Mills Decl. ¶ 5.) The Plaintiff argues that the Defendant “marketed and promoted his Social Media Strategist certification course in Georgia.” (Pl.’s Resp. to Mot. to Dismiss, at 6-7.) Even assuming this to be true, "subsection (1) long-arm jurisdiction in Georgia expressly depends on the *actual transaction of business* . . . by the defendant in the state." Diamond Crystal Brands, 593 F.3d at 1260 (emphasis added). "The statutory requirement that a nonresident defendant transact any business in Georgia must mean something more than . . . mere minimum contacts in a due process sense." Id. at 1262. Promoting a course is not the same as actually transacting business with a person or corporate entity. The Plaintiff then argues that two academic institutions in Georgia -- Atlanta Technical College and Columbus State University --

---

[2] In addition, Georgia courts require the plaintiff to show that the cause of action arises from or is connected to the act or transaction, and that the exercise of jurisdiction does not “offend traditional fairness and substantial justice.” See Aero Toy Store, 279 Ga. App. at 517-18.

offered his course. But the Defendant did not engage in any transactions with these institutions, and nobody in Georgia signed up for the course. (Def.'s Reply in Supp. of Mot. to Dismiss, at 2-3.) To be clear, the Defendant contracted with a Wisconsin-based company called Learning Resources Network ("LERN"). (Id., at 2.) The Defendant's lectures are displayed on LERN's online system UGotClass. (Id.) LERN markets these lectures to academic institutions. (Id.) The Defendant, however, was never informed of which institutions LERN was contracting with. (Id.) At most, LERN transacted business in Georgia, not the Defendant.

Second, for jurisdiction to exist under subsection 2, the tortious conduct itself must have occurred in Georgia. See Anderson v. Deas, 279 Ga. App. 892, 893 (2006) (Disapproving of cases which "held that a tortious act may be said to have been committed in this state within the meaning of paragraph (2) based either on occurrence of the tortious conduct or commission of the injury in this state."). "In trademark actions, the tort is said to occur where the defendant sells or attempts to sell the offending product." Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1319 (S.D.N.Y. 1989); see also Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir. 1956) ("[I]n cases of trade-mark infringement and unfair competition, the wrong takes place . . . where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's."); Swift v.

Medicate Pharmacy, Inc., 10 C 689, 2010 WL 3548006, at *4 (N.D. Ill. Sept. 3, 2010) ("[I]n trademark infringement and unfair competition claims, the 'wrong' is considered to have occurred where the 'passing off' occurs. . . .the situs is where the infringing product is sold, even if the defendant is located elsewhere."). When the tortious conduct occurs over an Internet website, "the situs of this tort is considered to be where the website, or servers which maintain the website, are located."[3] Gucci Am.,

---

[3] The Plaintiff, citing Licciardello v. Lovelady, 544 F.3d 1280 (11th Cir. 2008), states that the tortious act occurs wherever the website is accessible. Lovelady, however, dealt with an analogous provision in the Florida long-arm statute which -- unlike subsection 2 of the Georgia statute -- confers jurisdiction so long as the *injury* occurred in Florida. See id. at 1283. This is why the Circuit Court noted that it did not have to determine where the tortious conduct occurred. See id.; Louis Vuitton Malletier, S.A. v. Mosseri, 12-12501, 2013 WL 6224027, at *12 (11th Cir. Dec. 2, 2013) ("Applying our precedent in *Lovelady*, we conclude that under Florida law where [the defendant] created the websites and posted the alleged infringing material does not matter.") In the Internet context, Georgia courts have made clear that the culpable conduct occurs wherever the defendant initiates the transmission of information. See LABMD, Inc. v. Tiversa, Inc., 509 Fed. Appx. 842, 844-45 (11th Cir. 2013) ("The conduct giving rise to Defendants' alleged offense occurred where Johnson and Tiversa used computers . . . [b]ecause [they] used computers outside of Georgia, Defendants are not subject to personal jurisdiction under subsection (2)."); Huggins v. Boyd, 304 Ga. App. 563, 565 (2010) ("The conduct giving rise to the offense . . . occurred at the physical place where Huggins typed in and sent his e-mails. The effect was the transmission of the communications along electronic lines and receipt by Boyd . . . at the other end. Therefore, Huggins did not engage in any conduct . . . in Georgia, when he sent the e-mails from out of state."); Jordan Outdoor Enterprises, Ltd. v. That 70's Store, LLC, 819 F. Supp. 2d 1338, 1345 (M.D. Ga. 2011) ("Even if infringement occurred in Georgia as a result of Georgia residents viewing the infringing marks on Defendants' websites . . . the conduct giving rise to the infringement occurred in Arkansas, where Defendants created the websites.").

Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 241 (S.D.N.Y. 2010); see also Swift, 2010 WL 3548006, at *4 ("In infringement litigation involving Internet websites courts have tended to emphasize the location where the website is maintained--otherwise the alleged tort would be too diffuse to pinpoint.").

Here, the NISM is based in Minnesota. The alleged tortious conduct did not occur in Georgia. The Plaintiff argues that the "site is interactive and . . . is accessible from Georgia." (Pl.'s Resp. to Mot. to Dismiss, at 7.) The focus, however, is on where the website is *hosted*.[4] The Plaintiff further argues that the Defendant committed a tort in Georgia when two Georgia academic institutions offered his course. (Pl.'s Resp. to Mot. to Dismiss, at 8.) That two Georgia institutions offered his course does not mean that the Defendant committed a tort in Georgia. There is no evidence that the Defendant is affiliated with these institutions, or that they were acting as his agents when they offered the course. The Defendant testified that he has no educational partners in Georgia. (Mills Decl. ¶ 5.)

---

[4] The Plaintiff conflates the minimum contacts analysis with the subsection 2 analysis. It is true that sufficient minimum contacts may be found based on transactions through an interactive website. See Aero Toy Store, 279 Ga. App. at 522-24 (Discussing the Zippo sliding-scale jurisdiction test for Internet-based activity.). Subsection 2, however, requires the existence of tortious conduct *in Georgia*.

Third, the Plaintiff only briefly argues that there is jurisdiction under subsection 3. "In order for this subsection to apply, the defendant must regularly do or solicit business or engage in any other persistent course of conduct in the state, or derive substantial revenue from goods used or consumed or services rendered in Georgia." Catholic Stewardship Consultants, Inc. v. Ruotolo Associates, Inc., 270 Ga. App. 751, 757 (2004). Neither the Defendant, nor the NISM, has any employees or customers in Georgia. (Mills Decl. ¶¶ 3, 5.) There is no evidence that the Defendant specifically solicited business from Georgia. The Plaintiff reiterates its claim that two Georgia institutions offered the Defendant's course, and further states that the Defendant planned on attending a conference in Atlanta, Georgia. This falls far short of the regular contact required by subsection 3. The Court lacks personal jurisdiction over the Defendant.

## IV. Conclusion

For these reasons, the Court GRANTS the Defendant Eric Mills' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative to Transfer to the United States District Court for the District of Minnesota [Doc. 6].

SO ORDERED, this 5 day of December, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge